UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATSHA RAMSEY, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:15-CV-00776 JAR |
| ST. CHARLES COUNTY, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Patsha Ramsey brings this action under 42 U.S.C. § 1983 and state law against St. Charles County ("the County") and Larry Crawford ("Crawford"), Director of the St. Charles County Jail ("the Jail"), in his individual and official capacities, arising from her treatment while a pretrial detainee in the custody of the St. Charles County Jail.[1] Plaintiff alleges Defendants subjected her to excessive force amounting to cruel and unusual punishment, and deprived her of necessary medical care. Plaintiff further alleges Defendants were negligent under Missouri state law in their failure to keep her safe and free from harm during her detention. This matter is before the Court on Defendants' Motion for Summary Judgment on Plaintiff's First Amended Complaint (Doc. No. 39). The motion is fully briefed and ready for disposition. For the following reasons, Defendants' motion will be granted in part and denied in part.

---

[1] On Plaintiff's motion, the St. Charles County Sheriff's Department and the St. Charles County Jail were dismissed from the case on August 27, 2015 (Doc. No. 11).

### I. Background[2]

Plaintiff was a pretrial detainee confined at the Jail between December 2012 and September 2013. In December 2012, while a patient at CenterPointe Psychiatric Hospital in St. Charles, Missouri, Plaintiff was involved in an altercation with a nurse. She was arrested at the hospital, transferred to the Jail, and charged with felony assault. Soon thereafter, Plaintiff attempted suicide and was transferred to a suicide prevention housing unit at the Jail, where she remained for the duration of her detention.

Plaintiff contends correctional officers at the Jail labeled her a "problem inmate," and used this as a pretext to inflict abusive and cruel punishment on her, which included taking her clothing without cause and forcing her to be in her cell naked; denying her food as a punishment for bad behavior; and physically assaulting her, including the unnecessary use of pepper spray. She claims she was handcuffed to a table for extended periods of time wearing nothing but a "suicide smock," and that on several occasions she was tied to a "restraint chair" while naked. During these periods, Plaintiff alleges she was subjected to humiliation, degradation and physical assaults from correctional officers and other inmates. In addition, Plaintiff claims she received no medical treatment for her known mental health condition during her detention.

Defendant Crawford is the highest ranking official at the Jail and the person ultimately responsible for setting and overseeing Jail policies, procedures and daily operations. The St. Charles County Department of Corrections ("SCCDOC") has Department-wide policies concerning the use of force, restraints, and pepper spray. In instances requiring the use of force, it is SCCDOC's policy to ensure that Department personnel "use only that force necessary to

---

[2] The facts are taken from Defendants' Statement of Uncontroverted Material Facts ("SOF"), Doc. No. 41 and exhibits, and Plaintiff's Statement of Additional Uncontroverted Material Facts ("PSOF"), Doc. No. 44 and exhibits. For the purposes of the instant motion, the Court accepts facts undisputed by the parties as true and resolves disputed facts in favor of Plaintiff where she provides evidence to support her allegations.

effect lawful objectives," i.e., "lawful restraint, apprehension, detention or in defense of the Officer or of another human being" (Doc. No. 39-2). SCCDOC prohibits the use of restraining devices or methods as a form of punishment or "for more time that is absolutely necessary" (Doc. No. 39-3). It is also SCCDOC policy that oleoresin capsicum spray (more commonly referred to as OC spray or pepper spray) is to be deployed exclusively as a control agent for inmates who pose a serious physical threat to staff or other inmates, inmates who pose a serious threat to the safe, secure and orderly operation of the facility, or as a tactical agent in quelling a fight, disturbance or riot situation. Training is required before any SCCDOC staff may carry and use OC spray. (Doc. No. 39-4).

## II. Legal standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976).

### III. Discussion

#### A. § 1983 Claims

##### 1. Excessive force-cruel and unusual punishment

Plaintiff alleges Defendants subjected her to unreasonable and excessive force and cruel and unusual punishment, including the use of unnecessary and unlawful restraints and the unnecessary use of pepper spray. (First Amended Complaint ("FAC"), Doc. No. 6 at ¶¶ 34, 35). The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from "the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989) (citing Bell v. Wolfish, 441 U.S. 520, 535–39 (1979)); see also Edwards v. Byrd, 750 F.3d 728, 732 n. 2 (8th Cir. 2014) (pretrial detainee's right to be free from excessive force is founded on the Due Process Clause and, unlike the Eighth Amendment, the Clause prohibits any punishment of a pretrial detainee, whether cruel-and-unusual or not). Thus, a court must decide whether force was applied in a good-faith effort to maintain or restore discipline, or "to injure, punish or discipline" the detainee. Id. at 732 (quoting Putman v. Gerloff, 639 F.2d 415, 421 (8th Cir. 1981)). An official's use of force does not amount to punishment in the constitutional sense if it is "but an incident of some other legitimate governmental purpose." Bell, 441 U.S. at 535, 538 (providing an analogous rule in the context of a conditions-of-confinement challenge brought by pretrial detainees). Moreover, conduct that is merely negligent or grossly negligent does not implicate the protections of the Due Process Clause. See, e.g., Daniels v. Williams, 474 U.S. 327, 328 (1986); Clemmons v. Armontrout, 477 F.3d 962, 966 (8th Cir. 2007); Wilson v. Lawrence Cnty., 260 F.3d 946, 955 (8th Cir. 2001).

In deciding whether the force used against a pretrial detainee is "excessive," "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively

unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472-73 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" Id. Factors relevant to assessing the objective reasonableness of force used include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. (citing Graham, 490 U.S. at 396). In accordance with Kingsley, the Court makes the reasonableness determination from the perspective of a reasonable officer on the scene; accounts for the legitimate interests that stem from the need to manage the facility; and gives deference to SCCDOC policy[3] which allows the use of restraints "to prevent self-injury or injury to others." Id. at 2473.

### a. County and Crawford in his official capacity

In a § 1983 action, a local government may be held liable only if the plaintiff identifies a particular policy, custom, or practice that resulted in the alleged constitutional violations.[4] Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-91 (1978); City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989); Ware v. Jackson Cnty., Mo., 150 F.3d 873, 880 (8th Cir. 1998). Defendants argue that summary judgment is appropriate because there is no evidence of a

---

[3] Specifically, SCCDOC policy provides that "[r]estraining devices/methods will be used only as necessary to provide for the safety, security and protection of the general public, all personnel, and the inmates being held in the custody of any SCCDOC facility;" "limited to those occasions and situations that are deemed to be appropriate and adequately justified in response to emergent and/or dangerous situations(s), as dictated by the behavior of the individual inmate(s) requiring restraint, so as to prevent self-injury or injury to others, or as otherwise justified as a preventative security measure"; and not as a form of punishment or for more time than is "absolutely necessary, or for longer than specified within these procedural requirements." (Doc. No. 39-3 at 1)

[4] Because a suit against a county officer in his or her official capacity seeks to recover from the county itself, see Parrish v. Ball, 594 F.3d 993, 997 (8th Cir. 2010), Crawford is entitled to summary judgment to the extent he is sued in his official capacity if the County is not liable.

facially unconstitutional policy, or a causal connection between a policy and Plaintiff's alleged constitutional violations, citing Monell. According to Plaintiff's own expert, the SCCDOC policies regarding use of force, restraints, and pepper spray appear to be constitutional, as they comply with correctional industry standards. (Deposition of Dr. Thomas Shull ("Shull Depo."), Doc. No. 39-5 at 18:8-13; 19:12-25; Doc. No. 44-13 at 33:18-34:2; 46:24-47:13). Plaintiff responds that the existence of written policies does not relieve a defendant of liability when it has a custom of ignoring those policies, citing Ware, 150 F.3d at 882, and that in this case, Defendants had a custom of depriving her of her constitutional rights through excessive force and cruel and unusual punishment (Doc. No. 45 at 10-11).

**Restraint to table**

On two separate occasions during her detention, Plaintiff was restrained to a dayroom table in her housing unit by a chain approximately three feet in length, secured either to her wrist or ankle. Crawford testified that because Plaintiff was frequently confined to her cell for disciplinary reasons, he consulted with medical staff and the Assistant Director about restraining her to the dayroom table to get her out of her cell (Deposition of Larry Crawford ("Crawford Depo."), Doc. No. 39-6 at 92:18-93:11; 96:3-10; 98:7-17). Crawford acknowledged the practice was "unusual" and not "within [their] normal procedures" (Crawford Depo., Doc. No. 44-3 at 104:1-8; 105:12-13), but considered it acceptable because they routinely restrain inmates to a bench or chair while awaiting booking or to see medical (id. at 95:21 to 98:4; 100:24-101:11).

The April 19, 2013 directive to Jail staff, issued by Assistant Director Vaughn, states:

Because of Inmate Patsy [sic] Ramsey's continuous self-harm and until further notice, she (Ramsey) is to be out of her cell on the first and second shifts and restrained to the table in the dayroom. Staff with back up is expected to allow her (Ramsey) to utilize the restroom on an hourly basis or as needed.

> Because Inmate Ramsey is still classified as "constant"[5], during the night shift, she (Inmate Ramsey) will remain in the dayroom secured to the table but will be allowed to sleep on a portable bunk. Her use of the restroom will remain the same as mentioned above.
>
> Additional staff is not required to monitor this inmate.
>
> Staff is to document all activities of this Inmate, i.e.; checks, restroom usage, disturbing unit, etc.
>
> Supervisors will be required to check on Inmate Ramsey every two hours and involve Medical if necessary.

(Doc. No. 44-4)

Crawford did not recall any restrictions on the frequency or length of time Plaintiff was restrained to the table (Crawford Depo. at 98:10-20), but testified it was for "less than a day" and "on one occasion" (id. at 98:23-24; 99: 103:12-18). The record, however, contains conflicting testimony among corrections officers regarding the length of time Plaintiff was actually restrained. See Deposition of John Pounds ("Pounds Depo."), Doc. No. 44-5 at 47:16-19 ("close to seven days"); Deposition of Tracy L. Leslie ("Leslie Depo."), Doc. No. 44-6 at 34:20-35:3; 36:1-4) ("longer than two weeks"); Deposition of Michael Johnson ("Johnson Depo."), Doc. No. 44-8 at 75:16-17) ("days"); Deposition of Melissa Hastings, see Shull Report at 18-19 ("one to two days"). Corrections officers also voiced concerns over the appropriateness of the practice, characterizing it as "extreme" (Leslie Depo. at 33:17-34:3), "demeaning" (Deposition of Lisa Glenn ("Glenn Depo."), Doc. No. 44-7 at 38:1-46:25) and "degrading" (Pounds Depo. at 47:21-50:4). See also Johnson Depo. at 80:16-22 ("[t]hat was like turn of the century stuff that was being done"); Pounds Depo. at 50:2-4 ("We all made the statement if it was our daughter or our sister, we would have a problem with it.").

---

[5] When an inmate is put on "constant" observation, an officer must be within five feet of that inmate and have a direct line of sight at all times. (Deposition of Debbie Echele ("Echele Depo."), Doc. No. 44-16 at 43:24-44:2)

On June 27, 2013, Plaintiff attempted suicide by wrapping the chain restraining her to the table around her neck. Crawford testified that once he was informed that Plaintiff had tried to harm herself while restrained to the table, it was his intent to withdraw authorization for the practice; however, he never communicated this to his staff, either verbally or by written order. (Crawford Depo., Doc. No. 44-3 at 104:18-105:20).

Based on the record before it, the Court concludes that genuine issues of material fact exist as to whether restraining Plaintiff to a table was objectively reasonable under the circumstances.[6] There is no dispute that Plaintiff was "a challenging inmate with a consistent history of aggression, defiance, self-destructive and other anti-social behaviors"[7] (Expert Opinion of Dr. Thomas Shull ("Shull Report"), Doc. No. 44-11 at 30, 38); however, it is also undisputed that she had "serious mental health needs" and that Defendants were aware of those needs (Doc. No. 40 at 14). While restraints may be employed as a means to temporarily restrain a mentally ill inmate who is acting out, restraints may not be used for punishment alone. See e.g., Coleman v. Wilson, 912 F. Supp. 1282, 1313 (E.D. Cal. 1995) ("Restraints are necessary in some instances for proper management of a mentally ill inmate, but … should only be used when physical assault, by the mentally ill inmate against others or against him or herself, is imminent or has just occurred, and … only in accordance with strict guidelines.").

Here, the record is inconsistent as to the motive or purpose for restraining Plaintiff in this manner. Crawford testified that he consulted with medical staff and the Assistant Director about restraining Plaintiff to the day room table to get her some "out of cell time," whereas the

---

[6] Defendants argue it is clear from the record that Crawford did not *subjectively* believe restraint posed a substantial risk of harm to Plaintiff (Doc. No. 40 at 12); however, the application of the objective standard of Kingsley does not involve subjective considerations. See Kingsley, 135 S. Ct. at 2472-73.

[7] Plaintiff was involved in at least 63 documented incidents over her nine-month detention, including 19 suicide or self-harm attempts, nine altercations with other inmates, and 15 documented confrontations with staff (Shull Report at 29-30).

Assistant Director indicated that Plaintiff was to be restrained to the table because of her "continuous self-harm." Contrary to Crawford's assertion that Plaintiff was restrained for "less than a day" and "on one occasion," the accounts of corrections officers varied from "one to two days" to "longer than two weeks," and Assistant Director Vaughn directed that Plaintiff be restrained "until further notice." At this stage of the proceedings, it is not the Court's province to evaluate the credibility of the witnesses or weigh conflicting evidence.

Crawford also testified that one way to discipline inmates was to take away their day room privileges and restrict them to their cells (Crawford Depo. at 92:20-93:5). Given that Plaintiff was a discipline problem and did not like being in her cell, the objective of disciplining her, while at the same time protecting her from herself, could arguably have been achieved by keeping her in her cell, as opposed to restraining her to a table in the day room. Viewing the evidence in the light most favorable to Plaintiff, the Court cannot conclude, as a matter of law, that a reasonable juror could not find the restraint was used to harm or punish Plaintiff.

Plaintiff further alleges that Defendants subjected her to excessive force by placing her in a restraint chair for prolonged periods of time and in some cases naked, and spraying her unnecessarily with pepper spray. There were ten documented instances of Plaintiff being placed in a restraint chair, three of which exceeded the 3-hour limit without command authorization pursuant to SCCDOC policy (Shull Report at 35). On four occasions, Plaintiff was held naked in a restraint chair (Id. at 37-38). Plaintiff's expert concludes that in some instances she was naked "by her choice where she stripped her own clothes and was combative creating exigent circumstances, but in other incidents, there was no justification" (Id. at 39). There were also four documented incidents of Plaintiff being sprayed with OC spray, and no record that Plaintiff was provided an opportunity to decontaminate in three of these incidents (Id. at 31-33). Defendants

do not address these claims in their briefing. In any event, the Court finds there are genuine disputes of fact regarding the circumstances and amount of force used against Plaintiff, precluding summary judgment in favor of the County (and Crawford in his official capacity) on her excessive force claim.

### b. Crawford in his individual capacity

As for Crawford's qualified immunity defense, the Court denies summary judgment on that ground as well. An official is entitled to summary judgment based on qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation. Capps v. Olson, 780 F.3d 879, 884 (8th Cir. 2015) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)). As discussed above, there is affirmative evidence in the record that raises genuine issues of material fact regarding Defendants' use of force against Plaintiff. In addition, the law is well-established that *any* punishment of a pretrial detainee, "be that punishment cruel-and-unusual or not," is prohibited by the Due Process Clause. Edwards, 750 F.3d at 732 n.2. Crawford is, therefore, not entitled to summary judgment on the grounds of qualified immunity.

### 2. Deprivation of Necessary Medical Care

### a. County and Crawford in his official capacity

Plaintiff alleges Defendants were deliberately indifferent to her known mental health condition by failing to provide her with appropriate treatment during her detention and by detaining her under conditions that exacerbated her condition (FAC at ¶¶ 44, 45). A pretrial detainee's claims are evaluated under the Fourteenth Amendment, and she is "entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment."

Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004). Therefore, a detainee's Fourteenth Amendment claim of deliberate indifference is analyzed under the deliberate indifference standard for an Eighth Amendment violation. Id.

To proceed with her deliberate indifference claim, Plaintiff must demonstrate that (1) she suffered from a serious medical condition, (2) Defendants knew of the condition, and (3) Defendants deliberately disregarded the condition. See Christian v. Wagner, 623 F.3d 608, 613 (8th Cir. 2010); Nelson v. Shuffman, 603 F.3d 439, 448 (8th Cir. 2010). Defendants do not dispute that Plaintiff had "serious mental health needs" or that they had knowledge of those needs, but argue the record is devoid of evidence that Defendants deliberately disregarded her needs by not providing her with treatment.

The uncontroverted evidence shows that Plaintiff was provided treatment.[8] According to the Assistant Medical Director for the SCCDOC, Plaintiff was under the care of, and seen monthly by a psychiatrist, and weekly by a mental health counselor (SOF at ¶¶ 22-25; Affidavit of Debora Echele ("Echele Aff."), Doc. No. 39-7 at ¶ 8). The Assistant Medical Director states there are 352 pages of medical records related to Plaintiff's care and treatment during her detention (Echele Aff. at ¶ 7). While this is indicative of treatment, these medical records are not in the record before the Court.

Plaintiff was transferred to St. Joseph's Hospital on June 27, 2013 and September 18, 2013, for treatment related to her mental health needs (Id. at ¶ 9). As for Plaintiff's allegation

---

[8] Plaintiff denied "sufficient knowledge to admit or deny" that while confined she was seen and treated by a board certified psychiatrist and a counselor (see Plaintiff's Response to Defendants' SOF, Doc. No. 44 at ¶¶ 22-25); however, this response is insufficient to refute a properly asserted fact by Defendants. See E.D. Mo. L.R. Local Rule 4.01(E) ("All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."); Walker v. City of New York, 63 F. Supp.3d 301, 306 n.4 (E.D. N.Y. 2014) ("Merely stating that plaintiffs have insufficient knowledge or information to be able to admit or deny fact asserted by defendant on summary judgment does not specially controvert a fact.").

that Defendants failed to provide her with *appropriate* treatment, an inmate's mere disagreement with a prescribed course of treatment is insufficient to establish deliberate indifference. Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010). Even negligent treatment is insufficient to rise to a constitutional violation. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Fourte v. Faulkner County, Ark., 746 F.3d 384, 387 (8th Cir. 2014) ("Deliberate indifference is more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."). Further, there is no medical evidence in the record from which a jury could find that Plaintiff's condition was exacerbated by the conditions of her detention. See Jackson v. Riebold, 815 F.3d 1114, 1120 (8th Cir. 2016) (where deliberate indifference claim is based on delay in treatment, plaintiff must produce verifying medical evidence establishing detrimental effect of delay).

Summary judgment is appropriate when one party has presented no evidence sufficient to create a question of fact with regard to an essential element of that party's claim. Brooks v. Roy, 776 F.3d 957, 959 (8th Cir. 2015) (citing St. Martin v. City of St. Paul, 680 F.3d 1027, 1032 (8th Cir. 2012)). There being no evidence from which a reasonable jury could find that Defendants deprived Plaintiff of her right to adequate medical care, or that her condition was exacerbated as a result of her conditions of detention, Plaintiff fails to state a claim under § 1983, and the County and Crawford in his official capacity are entitled to judgment as a matter of law on Plaintiff's claim of indifference to a serious medical need. Sims v. Cooper Cty., Mo., No. 05-4273-CV-CSOW, 2007 WL 2768306, at *5 (W.D. Mo. Sept. 19, 2007).

### b. Crawford in his individual capacity

As discussed above, the Court has found that the facts, even when viewed in the light most favorable to Plaintiff, do not demonstrate the deprivation of her constitutional right to

adequate medical care. If no constitutional violation occurred, the evaluation ends there. See Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003) ("Without the requisite showing of a constitutional violation, summary judgment is proper because [plaintiff] has failed to establish the existence of an essential element of [his] case."). Thus, Crawford is entitled to qualified immunity from Plaintiff's deliberate indifference claim against him in his individual capacity. Nettles v. Lombardi, No. 1:13-CV-146 JAR, 2016 WL 4502501, at *8 (E.D. Mo. Aug. 29, 2016).

### 3. Remaining allegations

Included in the separate counts of Plaintiff's complaint are allegations that Defendants encouraged and facilitated the use of excessive force by failing to conduct adequate internal affairs investigations; failing to discipline prior instances of misconduct; and failing to adequately hire, supervise or train their corrections officers (FAC at ¶ 38 (a)-(g)). Plaintiff also alleges that Defendants took her clothing without cause, denied her food as a punishment for bad behavior, and verbally and sexually abused her (FAC at ¶ 35). Although not asserted as separate claims, the Court has addressed each of these below.

#### (i) Inadequate investigations, and discipline

Plaintiff contends that as a matter of both policy and practice, Defendants conducted inadequate and defective investigations, thereby encouraging correctional officers at the Jail to believe they would not be subject to scrutiny or held accountable for their actions. Plaintiff also claims that correctional officers at the Jail abuse citizens in a manner similar to the abuse she suffered, but that Defendants make findings of wrongdoing in a disproportionately small number of cases and fail to adequately discipline similar misconduct.

A municipality may be held liable for failing to investigate claims of excessive force if a plaintiff demonstrates that (1) the municipality employed a custom or policy of ignoring such claims, and (2) said custom or policy was the "moving force [behind] the constitutional violation." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (quoting Monell, 436 U.S. at 694) (alterations in original). This theory does not apply here because Plaintiff has failed to identify any evidence suggesting such a policy or practice existed, or that such a policy or practice was the "moving force" behind any constitutional violation. To constitute a custom, the alleged unconstitutional conduct must be "continuing, widespread, and persistent," id., but Plaintiff fails to adduce any evidence of *other* allegedly uninvestigated incidents of excessive force by officers.

Plaintiff notes that Crawford admittedly did not personally review most of the incident reports concerning Plaintiff, which she contends documented a history of policy violations by Jail staff during her detention (Addendum to Expert Opinion ("Addendum"), Doc. No. 44-12 at 10-12). However, none of the incident reports submitted by staff during Plaintiff's detention are in the record. Thus, there is no evidence as to what, if any, policy violations Defendants would have had notice of. Further, Plaintiff's assertions regarding Defendants' failure to conduct adequate internal affairs investigations and discipline prior instances of misconduct are conclusory and not supported by any evidence in the record. Thus, Plaintiff's failure to investigate and discipline claim fails as a matter of law.

**(ii)  Failure to train and supervise**

To impose municipal liability under a failure to train theory, a plaintiff must submit evidence that: "(1) the [county's] ... training practices [were] inadequate; (2) the [county] was deliberately indifferent to the rights of others in adopting them, such that the failure to train

reflects a deliberate or conscious choice by [the county]; and (3) an alleged deficiency in the ... training procedures actually caused the plaintiff's injury." Parrish, 594 F.3d at 997 (quoting Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996)) (alterations in original). Although there is little affirmative evidence in the record of failure to train and supervise, there is certainly evidence of a lack of understanding among corrections officers as to SCCDOC policies on the use of restraints and OC spray and inconsistency surrounding the implementation of those policies. (See Addendum at 8, 11). This circumstantial evidence creates a material fact issue as to whether Defendants were deliberately indifferent in training and supervising their officers, and in light of Defendants' concession that Plaintiff has presented some evidence in the record of failure to train and supervise (SOF at ¶ 15), summary judgment will be denied.

### (iii) Denial of food and clothing, abuse and humiliation

Plaintiff has presented no evidence supporting her claims that food was intentionally withheld from her as punishment, or that she was subjected to verbal and sexual abuse (see Shull Report at 31, 34, 36). While Plaintiff's allegations that Defendants took her clothing without cause may be relevant to her excessive force claim, and specifically whether Defendants applied force to harm or punish her, these allegations do not give rise to a separate claim as pled, and Plaintiff has not asserted a conditions of confinement claim. Accordingly, summary judgment will be granted in favor of Defendants on these claims.

### B. State law claims of negligence

To prove a claim of negligence under Missouri law, "a plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." Brown v. Davis, 813

F.3d 1130, 1136 (8th Cir. 2016) (quoting Lesch v. United States, 612 F.3d 975, 981 (8th Cir. 2010)).

Plaintiff alleges that Defendants were negligent under Missouri state law in their failure to keep her safe and free from harm during her detention (FAC at ¶ 28). She alleges Defendants, acting through their employees and agents, breached that duty by, *inter alia*, failing to properly screen and assess her mental health condition; failing to appropriately treat her condition; failing to adopt and implement appropriate policies regarding the assessment and detention of prisoners who suffer from medical or mental health conditions; failing to appropriately screen and hire correctional officers and other employees qualified to care for and treat prisoners with mental health conditions; and failing to train, supervise and discipline those correctional officers and other employees (FAC at ¶ 29 (a)-(m)).

Even assuming Defendants' conduct breached their duty of care, as discussed above, see supra III.A.2, Plaintiff has offered no evidence that the failure to perform these duties proximately caused her any harm, as she was provided with treatment by a psychiatrist and mental health counselor and has produced no evidence to show a resulting exacerbation of her condition. Because Plaintiff has failed to provide evidence creating a genuine issue of material fact regarding causation, Defendants are entitled to summary judgment on her negligence claims.

**IV. Conclusion**

For these reasons, the Court will grant Defendants' motion for summary judgment as to Plaintiff's § 1983 claim of deprivation of necessary medical care (Count III) and Plaintiff's state law negligence claims (Count I), and deny summary judgment as to Plaintiff's § 1983 claim of excessive force (Count II), which includes Plaintiff's allegations of failure to train and supervise.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment on Plaintiff's First Amended Complaint [39] is **GRANTED** in part and **DENIED** in part in accordance with the rulings herein.

This case remains set for trial on **July 24, 2017.**

Dated this 30th day of June, 2017.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**